UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
VICTOR UWAKWE,                                          :
                                                        :
                        Plaintiff,                      :
                                                        :
                -against-                               :       **OPINION AND ORDER**
                                                        :       **15-CV-06703 (DLI)(RER)**
BRIDGING ACCESS TO CARE, INC.,                          :
                                                        :
                        Defendant.                      :
-------------------------------------------------------- x

**DORA L. IRIZARRY, Chief U.S. District Judge:**

On November 23, 2015, Plaintiff Victor Uwakwe ("Plaintiff") filed the instant action against his former employer, Bridging Access to Care, Inc. ("Defendant"), alleging that Defendant: (1) discriminated against him on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) retaliated against him for complaining about the discrimination; (3) created a hostile work environment; and (4) employed practices that had a disparate impact on him. (*See* Complaint ("Compl."), Dkt. Entry No. 1.)

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant moves to dismiss the Complaint for failure to state a claim for relief. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), Dkt. Entry No. 8.) Plaintiff opposes. (*See* Pl.'s Resp. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n), Dkt. Entry No. 13.) Defendant also moves to dismiss the Complaint on the ground that the Court lacks subject matter jurisdiction, but has articulated no arguments to support this assertion. Nonetheless, the Court independently reviewed the Complaint and determined that it indeed has subject matter jurisdiction. *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001); *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). For the reasons set forth below, Defendant's motion is granted in part and denied in part.

# BACKGROUND[1]

Plaintiff is a Nigerian national who was employed by Defendant as an accountant for almost ten years. (Compl. ¶ 6.) Plaintiff began his employment on October 25, 2005, and was terminated first verbally on February 5, 2015, and in writing the following day. (*Id.* ¶¶ 14, 29.)

Over the course of his employment, Plaintiff allegedly suffered discriminatory treatment due to his Nigerian nationality. (*Id.* ¶ 16.) Plaintiff alleges that this treatment included "degrading" actions from Defendant's Senior Program Director, Glenda Smith, who routinely ordered him to stop working in order to drive employees to specific locations or instructed him to pick up or deliver packages. (*Id.* ¶ 19.) Since non-Nigerian employees were not asked to perform these tasks, Plaintiff served as Defendant's "de facto taxi driver, or common messenger." (*Id.*)

Aside from performing additional tasks not required of his colleagues, Plaintiff claims that Defendant consistently denied him pay raises while other similarly situated non-Nigerian individuals received them. (*Id.* ¶ 20.) Although Plaintiff had received pay raises in the past, Defendant purportedly denied Plaintiff a pay raise in February 2015, and on other occasions during his employment. (*Id.* ¶¶ 20, 27.) Plaintiff also alleges that other non-Nigerian workers often received pay raises after performance evaluations, but that Plaintiff was denied these raises because he did not receive performance evaluations as often as his colleagues. (*Id.* ¶ 21.) Plaintiff states that, during his employment, he received only one performance evaluation, while his "counterparts received annual or at least more performance evaluations." (*Id.*) Plaintiff claims that he also earned a lower salary than his non-Nigerian colleagues, and lists nine individuals who

---

[1] The following facts are drawn from the Complaint filed in this action and from Plaintiff's complaint filed both with the New York State Division of Human Rights ("NYSDHR") and the United States Equal Employment Opportunity Commission ("EEOC"). As discussed in more detail below, the Court properly may consider this document on a motion to dismiss. *See Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 565 (2d Cir. 2006) (in deciding a motion to dismiss, "it is proper for this court to consider the plaintiffs relevant filings with the EEOC").

were hired after Plaintiff and who, while allegedly less qualified than Plaintiff, held comparable positions and performed similar functions to Plaintiff. (*Id.* ¶ 22.) Aside from receiving a lower salary than his colleagues and not receiving as many pay increases, Plaintiff was denied promotions and "other benefits of employment." (*Id.* ¶ 28.)

In early 2015, Defendant accused Plaintiff of stealing New York City Transit MetroCards. (*Id.* ¶ 23.) An investigation by the New York City Police Department ("NYPD") cleared Plaintiff, and Plaintiff asserts that this accusation was rooted in Defendant's adverse stereotype concerning Nigerians. (*Id.*)

On February 5, 2015, Plaintiff met with Defendant's Chief Executive Officer, Mr. Garcon, and complained about the above described conduct, including his complaint that he was paid less than his colleagues. (*Id.* ¶ 24.) Mr. Garcon purportedly was "enraged" at the allegations and immediately suggested that Plaintiff should "look for a new job." (*Id.* ¶ 25.) After their meeting, Mr. Garcon called Plaintiff and asked him if he wanted "to be terminated." (*Id.* ¶ 26.) Plaintiff alleges that he was terminated verbally that day, and in writing the next day. (*Id.* ¶¶ 14, 29.)

Plaintiff's termination led him to file a charge of discrimination concurrently with the New York State Division of Human Rights ("NYSDHR") and the U.S. Equal Employment Opportunity Commission ("EEOC") on February 17, 2015. (*See* Ex. B to Declaration of Gregory P. Mouton, Jr., dated December 29, 2015 ("December 2015 Mouton Decl."), Dkt. Entry No. 7-2; Compl. ¶ 9.) In the charge, Plaintiff identifies himself as Nigerian and asserts that he was discriminated against because he was denied promotions, pay raises and other employment benefits, paid a lower salary, and ultimately terminated because of his nationality. (Ex. B to December 2015 Mouton Decl., at 12.) Plaintiff received a right to sue letter from the EEOC, dated August 27, 2015, and timely commenced the instant action on November 23, 2015. (*See* Ex. A to Compl., Dkt. Entry No. 1-1.)

On December 30, 2015, Defendant moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Def.'s Mem.) Defendant contends that dismissal is warranted because Plaintiff has not alleged sufficient facts to state a claim for discrimination, retaliation, hostile work environment, or disparate impact. (*Id.* at 8-18.)

## **STANDARD OF REVIEW**

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Notably, courts may only consider the complaint itself, documents that are attached to or

4

referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

Defendant asserts that the Court may consider three exhibits attached to its motion to dismiss without converting the motion into one for summary judgment to wit: (1) Plaintiff's NYSDHR complaint; (2) Plaintiff's termination letter; and (3) the NYPD Verification of Crime/Lost Property Report ("NYPD Report") concerning the MetroCard theft incident. (Def.'s Mem. at 5.) Plaintiff does not oppose the Court's consideration of these three exhibits. (*See generally* Pl.'s Opp'n.)

Federal Rule of Civil Procedure 12(d) provides that, if on a Rule 12(b)(6) motion "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." However, the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint." *Halebian v. Berv*, 644 F.3d 122, 131 n. 7 (2d Cir. 2011). Under these exceptions, a court may consider: (1) "documents attached to the complaint as an exhibit or incorporated in it by reference"; (2) "matters of which judicial notice may be taken"; and (3) "documents either in plaintiff['s] possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)).

"Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* (internal citation omitted). A "court may take judicial notice of the records of state administrative procedures, as these are public records, without

5

converting a motion to dismiss to one for summary judgment." *Evans v. New York Botanical Garden*, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002).

Here, the Court takes judicial notice of Plaintiff's NYSDHR charge because it is a public document and a record of a state agency. *See Volpe v. Nassau Cty.*, 915 F. Supp.2d 284, 291 (E.D.N.Y. 2013); *Morris v. David Lerner Associates*, 680 F. Supp.2d 430, 436 (E.D.N.Y. 2010). The Court also considers Plaintiff's termination letter because it is integral to the Complaint. Plaintiff alleges that he "was terminated from his employment by BATC on or about February 6, 2015, pursuant to a letter Plaintiff received from Defendant's CEO, Gasner Garcon." (Compl. ¶ 14.) He also asserts that "Defendant terminated Plaintiff's longstanding employment for pre-textual reasons" and that the "genuine basis" for the termination was "discriminatory in nature and retaliatory." (*Id.* at ¶ 15.) These allegations indicates that the letter made Plaintiff's termination formal and official and that, in initiating this action, Plaintiff "'relie[d] heavily upon [the letter's] terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal citation omitted).

Contrary to Defendant's contention, the NYPD Report is not incorporated by reference. A document is incorporated by reference if the complaint makes, "a clear, definite and substantial reference to the document[]." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp.2d 54, 60 (S.D.N.Y. 2010); *see also Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985) ("[L]imited quotation does not constitute incorporation by reference."). Notably, Defendant concedes that the Complaint mentions the police investigation, but not the police report itself. (Def.'s Mem., at 6; Compl. ¶ 23.) While subtle, this distinction is crucial because it demonstrates that Plaintiff did not make a clear and definite reference to the NYPD Report. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 124 (S.D.N.Y. 2010) (noting "implicit reference" insufficient to

incorporate by reference). Accordingly, the Court does not consider the NYPD Report in deciding the motion to dismiss.

## DISCUSSION

**I.      Timeliness of Plaintiff's Claims Prior to April 23, 2014**[2]

Plaintiff asserts several claims under Title VII on the basis of his national origin. Defendant argues that Plaintiff's Title VII claims are time barred to the extent that they rely on conduct that occurred before April 23, 2014. (Def.'s Mem., at 7-8.) Plaintiff contends that the continuing violation exception to Title VII's limitations period applies to his claims. (Pl.'s Opp'n, at 8-10.) The Court finds that Plaintiff's claims that accrued before April 23, 2014 are untimely.

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e–5.) For the federal action to be timely, the plaintiff "must make the EEOC filing within 300 days of the alleged discriminatory conduct." *Id.* "This 300–day time period acts as a statute of limitations, and claims arising from acts that occurred more than 300 days prior to the employee's filing of a charge of discrimination with the EEOC are time-barred[.]" *Edner v. NYCTA-MTA*, 134 F. Supp.3d 657, 663 (E.D.N.Y. 2015) (internal citations omitted).

The complaint was filed with the NYSDHR and EEOC on February 17, 2015. (Ex. B to December 2015 Mouton Decl., at 3.) Thus, any claims based on acts that occurred before April 23, 2014, are time barred unless an exception applies. Attempting to resurrect his time barred claims, Plaintiff argues that the continuing violation doctrine applies because the acts were committed "in furtherance of an ongoing policy and practice of discrimination[.]" (Pl.'s Opp'n, at 9.)

---

[2] To the extent Defendant asserts its statute of limitations defense under Rule 12(b)(1), the Court considers it under Rule 12(b)(6) only. *See Frederick v. Jetblue Airways Corp.*, 2016 WL 1306535, at *4 (E.D.N.Y. Mar. 31, 2016).

Under the continuing violation exception to the Title VII's statute of limitations, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.,* 685 F.3d 135, 155–56 (2d Cir.2012) (internal citation and quotation marks omitted). The "existence of a discriminatory policy or mechanism" is "required under the continuing violation theory." *Lukasiewicz-Kruk v. Greenpoint YMCA*, 404 F. App'x 519, 520 (2d Cir. 2010) (Summary Order).

This exception applies to hostile work environment claims, because a hostile work environment's "very nature involves repeated conduct," *Chin*, 685 F.3d at 155, but is inapplicable to freestanding "discrete acts" of discrimination or retaliation. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Chin*, 685 F.3d at 157. Instead, each discrete act "constitutes a separate actionable unlawful employment practice[,]" *Morgan*, 536 U.S. at 114, and is "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113.

Here, Plaintiff cannot rely on the continuing violation exception because he has not alleged the existence of any "specific discriminatory policies or mechanisms[,]" *Valtchev v. City of New York*, 400 F. App'x 586, 588–89 (2d Cir. 2010) (Summary Order), "as required under the continuing violation theory." *Lukasiewicz-Kruk*, 404 F. App'x at 520; *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) ("[A] plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period."). Plaintiff alleges that he was subjected to "unlawful employment practices," (Compl. ¶ 30), but aside from conclusory allegations, like this one, Plaintiff offers no factual details concerning the discriminatory acts and does not allege plausibly that "specific and related instances of

discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). Similarly, Plaintiff's allegation of pay disparity is insufficient to show an ongoing discriminatory policy because, aside from listing the salaries of Plaintiff's colleagues, it contains no information on Defendant's policy concerning salary. These conclusory allegations will not trigger the continuing violation exception. *See Thomson v. Odyssey House*, 2015 WL 5561209, at *9 (E.D.N.Y. Sept. 21, 2015); *Taylor v. New York City Dep't of Educ.*, 2012 WL 3150388, at *4 (E.D.N.Y. Aug. 2, 2012); *Gaston v. New York City Dep't of Health Office of Chief Med. Exam'r*, 432 F. Supp.2d 321, 328 n.1 (S.D.N.Y. 2006).

Moreover, the Complaint's alleged discriminatory incidents are discrete acts and insufficient to warrant the application of the continuing violation exception. *See Morgan*, 536 U.S. at 114; *Chin*, 685 F.3d at 157 ("Discrete acts of this sort, which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period."). Plaintiff asserts that during his employment with Defendant, he was denied pay raises and employment benefits, was required to perform non-professional tasks, and did not receive promotions or performance evaluations. (*See generally* Compl.) With one exception, these allegations are undated and contain no factual support to unite the discriminatory acts into a pattern, practice, or policy of discrimination. *See Lomako v. New York Inst. Of Tech.*, 2010 WL 1915041, at *5 (S.D.N.Y. May 12, 2010). Without factual details connecting the allegations, Plaintiff alleges nothing more than "multiple incidents of discrimination," that cannot "amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *reversed on other grounds*, *Greathouse v. JHS Sec. Inc.,* 784 F.3d 105 (2d Cir. 2015); *Edner v. NYCTA-MTA*, 134 F. Supp.3d 657, 665 (E.D.N.Y. 2015).

Accordingly, any claims based on conduct that occurred before April 23, 2014 are time barred. However, any allegations concerning this time barred period are relevant, admissible "background evidence" in support of the undisputedly timely hostile work environment claim. *See Thomson*, 2015 WL 5561209, at *10; *Yang v. Dep't of Educ. of the City of New York*, 2016 WL 4028131, at *5 (E.D.N.Y. July 26, 2016).

## II.     Title VII Discrimination Claim

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A claim of employment discrimination under Title VII is analyzed using the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing: "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015) (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012)). A circumstance that gives rise to an inference of discrimination for purposes of making out a *prima facie case* is where "the employer treated plaintiff less favorably than a similarly situated employee outside his protected group." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

To defeat a motion to dismiss, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated[.]" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). In particular, with respect to the fourth prong of the *McDonnell Douglas* analysis, "a plaintiff need only give plausible support to a minimal

inference of discriminatory motivation." *Id.* (internal citation and quotation marks omitted.) Nonetheless, "a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015) (Summary Order) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)) (alteration in original).

### A. Adverse Employment Action

In a Title VII discrimination case, a plaintiff must "plausibly allege" that "the employer took adverse action against him." *Vega*, 801 F.3d at 87. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Id.* at 85 (internal citation and quotation marks omitted). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal citation and quotation marks omitted). Examples of adverse employment actions include, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (quoting *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003)).

Here, Plaintiff alleges that he was terminated unjustifiably, denied equal pay, promotions, frequent performance evaluations and related raises, other pay raises, wrongfully investigated for New York City Transit MetroCard theft, and assigned additional menial tasks. Although the pleading standard is not high, the majority of these allegations are lacking the minimum factual content necessary to plead an adverse employment action, except being fired is *per se* an adverse employment action. Each allegation is addressed below.

Plaintiff contends that Defendant denied him promotions that his non-Nigerian counterparts received. Without any detail, this sole allegation is insufficient to demonstrate an adverse employment action because Plaintiff fails to allege when he was denied a promotion or what promotion he was denied. To allege properly an adverse employment action based on a denied promotion, Plaintiff was required to assert that he applied either formally or informally for a position or that one was available without his knowledge. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) ("We read *McDonnell Douglas* . . . generally to require a plaintiff to allege that he or she applied for a specific position or positions and was rejected therefrom . . . This general mandate ensures that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer."); *Johnson v. Morrison & Foerster LLP*, 2015 WL 845723, at *3 (S.D.N.Y. Feb. 26, 2015).

Plaintiff further alleges that he was denied annual or "at least more performance evaluations" that other employees received, which "often" led to pay raises for those non-Nigerian employees. (Compl. ¶ 21.) This assertion also is insufficient to state a plausible adverse employment action because the Complaint lacks allegations that Plaintiff was entitled to an evaluation, was denied a raise as a result of a required evaluation, or that he ever requested an evaluation. Even a negative evaluation only constitutes an adverse employment action when it, "trigger[s] negative consequences to the conditions of employment." *Taylor v. New York City Dep't of Educ.*, 2012 WL 5989874, at *7 (E.D.N.Y. Nov. 30, 2012). Here, there is no allegation of an adverse result because Plaintiff does not assert that he would have received a raise as a matter of course if given an evaluation. *See Herling v. New York City Dep't of Educ.*, 2014 WL 1621966, at *6 (E.D.N.Y. Apr. 23, 2014) ("The denial of a raise or bonus that an individual is entitled to or expects to receive as a matter of course constitutes 'a materially adverse change in the terms and

conditions of employment and constitutes an adverse employment action.'") (citation omitted).

Plaintiff also contends that, in early 2015, Defendant accused him of stealing New York City MetroCards and that, subsequently he was investigated based, "upon a suspicion rooted in adverse stereotype[s] Defendant[] ha[s]/had concerning Nigerians." (Compl. ¶ 19.) Plaintiff also asserts that he routinely was ordered to "serve as a de facto taxi driver, or common messenger" for other employees in the office. (Compl. ¶¶ 19, 23.) These allegations do not allege an adverse employment action because they lack details concerning any materially adverse change in Plaintiff's terms and conditions of employment. For example, there is no allegation that Plaintiff suffered disciplinary action, diminished work responsibilities, or any disadvantage as a result of the theft accusation, investigation, or additional job duties. *See Jaeger v. N. Babylon Union Free Sch. Dist.*, 2016 WL 3198276, at *8 (E.D.N.Y. June 7, 2016) ("Plaintiff's claim of an adverse employment action is based entirely on the fact that an investigation was conducted. However…the law is clear that investigations alone are not adverse employment actions."); *Benjamin v. City of Yonkers*, 2014 WL 6645708, at *6 (S.D.N.Y. Nov. 24, 2014) ("[T]o constitute an adverse employment action, an undesirable workload must be accompanied by a material detriment to an employee's working conditions.").

Defendant does not dispute that Plaintiff's remaining allegations of unequal pay, denial of pay raises and other benefits, and termination are sufficient to plead an adverse employment action. (*See generally* Def.'s Mem. 9-15.) Instead, Defendant argues that these allegations, standing alone, do not support an inference of discrimination.

### B. Inference of Discrimination

After plausibly alleging that the employer took adverse action against him, a plaintiff must allege facts supporting his claim that, "his race, color, religion, sex, or national origin was a

motivating factor in the employment decision." *Vega*, 801 F.3d at 87. "The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met [his] burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason." *Stratton v. Dep't for the Aging for City of New York*, 132 F.3d 869, 878 (2d Cir. 1997) (internal citation omitted). A plaintiff may meet this burden through direct evidence of intent to discriminate, or "by indirectly showing circumstances giving rise to an inference of discrimination." *Vega*, 801 F.3d at 87.

One way of raising an inference of discrimination is through a "showing of disparate treatment-that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group." *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (internal citation and quotation marks omitted). "To establish an inference of discrimination, a plaintiff must allege that [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (internal citation and quotation marks omitted). "In undertaking this analysis, courts generally look to whether a plaintiff and [his] comparators were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Ray v. Weit*, 2016 WL 1229056, at *4 (E.D.N.Y. Mar. 28, 2016) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). A showing of disparate treatment is only one method of raising an inference of discrimination and a plaintiff also may create a "'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Vega*, 801 F.3d at 87 (internal citation omitted).

As an initial matter, Defendant mistakenly asserts that only "those allegations which potentially rise to the level of an adverse employment action should be considered" in assessing

14

whether Plaintiff has adequately alleged that his national origin was a motivating factor in the employment decisions. (Def.'s Mem. 9.) This argument is contradicted squarely by the Second Circuit's decision in *Vera*. In *Vera*, the Second Circuit held that, "other allegations of discrimination, even if they do not independently constitute adverse employment actions, provide 'relevant background evidence' by shedding light on Defendant's motivation[.]" *Id.* at 88. Thus, the Court may consider all of Plaintiff's allegations in the Complaint.

Plaintiff contends that he suffered disparate treatment because he is Nigerian. (Compl. ¶¶ 11, 30.) Specifically, Plaintiff alleges that he was paid unequally by including a chart with the salaries of nine "non-Nigerian counterparts" and asserts that he was "consistently denied pay raises" that other "similarly situated" colleagues received. (Compl. ¶¶ 20-21.) However, Plaintiff alleges no facts to suggest a plausible inference of discriminatory motivation. There are no allegations that these employees were similarly situated to Plaintiff in all material respects. For example, the Complaint does not allege that any of these individuals were accountants, or had the same job responsibilities, level of experience, education, seniority, reported to the same supervisor, or were subject to the same workplace standards as Plaintiff. While the law does not require that all of these allegations be pled or "detailed pleadings regarding the similarly situated comparators[,]" *Yang*, 2016 WL 4028131, at *9, the Complaint here lacks a single factual allegation from which the Court could infer that these individuals bear a "reasonably close resemblance" to Plaintiff. *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014); *Ray*, 2016 WL 1229056, at *5.

Moreover, the Court recognizes that, "the Second Circuit has made clear that 'at the initial stage of a litigation, the plaintiff's burden is minimal — he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by

15

discriminatory intent.'" *Conforti v. Sunbelt Rentals, Inc.*, 2016 WL 4288699, at *10 (E.D.N.Y. Aug. 15, 2016) (quoting *Vega,* 801 F.3d at 87). However, the Complaint lacks any information from which the Court can infer that Defendant's actions, such the lack of pay raises and unequal pay, were motivated by Plaintiff's Nigerian descent. *See Patane v. Clark,* 508 F.3d 106, 112 (2d Cir. 2007) (affirming dismissal of Title VII discrimination claim where plaintiff "failed to plead any facts that would create an inference that any adverse action taken by any defendant was based upon her gender"). Plaintiff cannot make a bare allegation that some individual is "similarly situated" and survive a motion to dismiss. *See Offor v. Mercy Med. Ctr.*, 2016 WL 929350, at *12 (E.D.N.Y. Mar. 10, 2016) (collecting cases and noting that "courts in this Circuit have held that the plaintiff must at least plead allegations from which it is plausible to conclude that the comparators are similarly situated"). Accordingly, Plaintiff's Title VII discrimination claim is dismissed.

### III. Title VII Retaliation Claim

"Title VII forbids an employer to retaliate against an employee for, *inter alia,* complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). To state a viable Title VII retaliation claim, a plaintiff must allege facts tending to show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (internal citation and quotation marks omitted). The "allegations in the complaint need only give plausible support to the reduced prima facie requirements[.]" *Id.* An "adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N.*

*& Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006). This "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII." *Id.*

Plaintiff contends that Defendant terminated him because he is Nigerian and in retaliation for complaining about the inadequate pay he received and the other discriminatory treatment he suffered. (Compl. ¶¶ 24, 29.) Defendant does not contest any of the Complaint's factual allegations concerning this claim. Instead, Defendant seeks dismissal of Plaintiff's retaliation claim on the sole ground that it is foreclosed by Plaintiff's termination letter because the letter offers a non-pretextual alternative nondiscriminatory explanation for Plaintiff's termination. (Def.'s Mem., at 15-16.) The termination letter provides that the decision to terminate Plaintiff's employment "was based on [the parties] mutual agreement and understanding." (*See* Ex. D to December 2015 Mouton Decl., Dkt. Entry No. 7-4.) To the extent that this statement represents Defendant's nondiscriminatory reason for terminating Plaintiff, Defendant's argument is premature. "It is, of course, possible that the evidence will demonstrate that [the Defendant] had legitimate nondiscriminatory and non-retaliatory reasons for [its] actions, but that is an issue to be decided on summary judgment, not at the motion to dismiss stage." *Reynoso v. All Foods, Inc.*, 908 F. Supp.2d 330, 343 (E.D.N.Y. 2012) (quoting *Robinson v. Gucci Am.,* 2012 WL 259409, at *6 (S.D.N.Y. Jan. 27, 2012)). Thus, Defendant's motion to dismiss the retaliation claim is denied.

IV. **Hostile Work Environment**

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." *Patane*,

17

508 F.3d at 113 (internal citation and quotation marks omitted). While the Court must consider the "totality of the circumstances" when evaluating a claim, it may consider: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.* (internal citation and quotation marks omitted).

The standard for establishing a hostile work environment is "high." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). However, at the motion to dismiss stage, the Second Circuit has cautioned, "against setting the bar too high." *Id.* Thus, to avoid dismissal, "a plaintiff need only plead facts sufficient to support the conclusion that [he] was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse.'" *Patane*, 508 F.3d at 113 (internal citation omitted).

Recognizing that the Court should not set "the bar too high," *Id.*, Plaintiff still fails to plead sufficient facts to allege a viable hostile work environment claim. Plaintiff alleges that Defendant directed comments "at his accent" and that the employment practices were "marked by outrageous discriminatory conduct and comments." (Compl. ¶¶ 13, 31.) Aside from these bald conclusory allegations, the Complaint does not provide any information concerning the conduct, or the frequency, content, or author of the comments. "Without more specificity, the Court cannot conclude that plaintiff's work environment was objectively hostile." *Almontaser v. New York City Dep't of Educ.*, 2014 WL 3110019, at *8 (E.D.N.Y. July 8, 2014); *see also Epstein v. Cty. of Suffolk*, 2015 WL 5038344, at *12 (E.D.N.Y. Aug. 26, 2015).

Moreover, Plaintiff's remaining allegations, including his allegations concerning his termination and his duties as a "de facto taxi driver, or common messenger," also are insufficient to support a hostile work environment claim. While these duties or events may offend Plaintiff,

18

they lack the minimum factual specificity necessary either to support that the conditions of Plaintiff's employment were altered for the worse or to demonstrate how his work environment was hostile. Indeed, "conduct must be extreme to amount to a change in the terms and conditions of employment," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), yet the Complaint offers no factual support to allege plausibly the severity or pervasiveness of the harassment. On this basis, dismissal is proper. *See Dechberry v. New York City Fire Dep't*, 124 F. Supp.3d 131, 158 (E.D.N.Y. 2015); *Feliciano v. City of New York*, 2015 WL 4393163, at *13 (S.D.N.Y. July 15, 2015); *Almontaser*, 2014 WL 3110019, at *8. For all the foregoing reasons, Plaintiff's hostile work environment claim is dismissed.

## V.     Disparate Impact Claim

Defendant also moves to dismiss Plaintiff's disparate impact claim. (Def.'s Mem., at 17-18.) To establish a *prima facie* case of disparate impact under Title VII, a plaintiff "must show that a facially neutral employment policy or practice has a significant disparate impact." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998).

As an initial matter, Plaintiff's opposition brief neither mentions this claim nor addresses Defendant's arguments seeking its dismissal. By failing to respond to Defendant's arguments, Plaintiff has abandoned this claim. *See Pietri v. ELC Mgmt., LLC*, 2016 WL 4203495, at *15 (E.D.N.Y. Aug. 9, 2016) (holding plaintiff's claim abandoned at summary judgment stage where plaintiff "never addresses disparate impact in her opposition papers."); *Offor*, 2016 WL 929350, at *21 (collecting cases); *McLeod v. Verizon New York, Inc.*, 995 F. Supp.2d 134, 143 (E.D.N.Y. 2014) (collecting cases and noting that "courts in this circuit have held that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims'") (internal citation omitted).

19

Even if Plaintiff had not abandoned this claim, it still would not have survived dismissal. Plaintiff alleges that, "the effect of the practices complained of . . . adversely affect his status as an employee because of his national origin." (Compl. ¶¶ 12, 30.) This conclusory allegation and the Complaint do not identify a neutral policy or practice that had a disparate impact on a protected group, as required in this Circuit. *See Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) ("Disparate impact claims 'are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on [a] protected group.'") (internal citation omitted). Instead, Plaintiff points to the allegedly discriminatory employment practices used to assert his Title VII discrimination claim as the basis for this claim. These practices, that Plaintiff alleges impacted him individually, do not support a disparate impact claim. *See Rodriguez v. Beechmont Bus Serv., Inc.*, 173 F. Supp.2d 139, 148 (S.D.N.Y. 2001). Accordingly, Plaintiff's disparate impact claim is dismissed.

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss is granted as to Plaintiff's Title VII discrimination, hostile work environment, and disparate impact claims, but denied as to Plaintiff's retaliation claim.

SO ORDERED.

Dated: Brooklyn, New York
March 16, 2017

　　　　　　　　　　　　　　　　　　　　　　　　／s／　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　DORA L. IRIZARRY
　　　　　　　　　　　　　　　　　　　　　　　　Chief Judge

20